IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHASE FROST,<br>    Plaintiff,<br><br>    v.<br><br>PROVIDENT LIFE AND ACCIDENT<br>INSURANCE COMPANY,<br>    Defendant. | CIVIL ACTION<br><br><br><br><br>NO. 19-6115 |

DuBOIS, J.                                July 19, 2021

**M E M O R A N D U M**

## I. INTRODUCTION

This case arises out of defendant Provident Life and Accident Insurance Company's decision to terminate plaintiff Chase Frost's disability benefits on the ground that he was able to return to work. Plaintiff argues that, after suffering severe injuries while serving as a Delaware County firefighter in 2007, he can only return to work if an employer offers extensive accommodations.

In 2016, plaintiff was hired by the City of Philadelphia as a Fire Services Paramedic. Almost immediately after beginning that employment, he was terminated by the City. Thereafter, and prior to filing the instant suit, plaintiff filed a separate suit against the City, alleging that the City terminated him based on his disability.

Presently before the Court are cross-motions for summary judgment. For the reasons that follow, the Court grants defendant's Motion for Summary Judgment and denies plaintiff's Motion for Summary Judgment.

## II. BACKGROUND

### A. Plaintiff's Injuries

On August 11, 2007, plaintiff "suffered catastrophic injuries when he was trapped inside [] a collapsed burning building while employed as a volunteer fire fighter." Pl.'s Statement of Undisputed Facts ("Pl.'s SUF") ¶ 18. "The accident caused [plaintiff] to sustain extensive 4th degree burns to over 60% of his body and ultimately resulted in having his left arm and right leg amputated." *Id.* ¶ 19.

### B. Disability Benefit Policy

At the time of the accident, plaintiff was insured under an Emergency Responder Blanket Accident Insurance Policy (the "Policy") issued by defendant. The Policy provides for payment of disability benefits for five years if the insured is unable to perform his own occupation. Administrative Record ("AR") at 82. After payment of disability benefits for five years, benefits are payable under the Policy only if an insured "is not able to engage in any gainful occupation in which he . . . might reasonably be expected to engage because of education, training, or experience." Def.'s Statement of Undisputed Facts ("Def.'s SUF") ¶ 4 (quoting AR at 82). Pursuant to the Policy, defendant began paying disability benefits to plaintiff in 2007. AR at 42. Defendant stopped paying disability benefits to plaintiff in 2017, claiming that he "no longer meet[s] the definition of disability as defined in the policy." *Id.* at 944.

### C. Plaintiff's Restrictions and Limitations

Dr. Linwood Haith, a general surgeon and the Chief of Burn Surgery for Crozer Keystone Health System, was part of the team that treated plaintiff for his injuries. Def.'s SUF ¶ 14. In the fall of 2016, defendant "spoke with a representative of Dr. Haith's office and confirmed that Dr. Haith was not assigning any [restrictions or limitations] at that time" with respect to plaintiff's activities. *Id.* ¶ 26. Dr. Haith concluded that plaintiff "could resume full activities." *Id.*

On January 3, 2017, after learning Dr. Haith's conclusion that plaintiff could resume full activities, defendant "denied [plaintiff's] claim for continued benefits." *Id.* ¶ 33.[1]

### D.  Separate Discrimination Suit

On October 31, 2017, plaintiff filed a separate case in this district—*Frost v. City of Philadelphia*, assigned to Judge Michael M. Baylson—alleging in the Amended Complaint that he "was able to perform the essential functions of [a] Fire Services Paramedic position with a reasonable accommodation." No. 17-3869, ECF No. 3 ¶ 45.  In that case, plaintiff states that he "commenced employment" by the City of Philadelphia as a Fire Services Paramedic cadet on September 12, 2016, and the City "immediately terminat[ed]" him based on his disability, in violation of the Americans with Disabilities Act ("ADA").  *Id.* ¶¶ 70, 120.  Plaintiff further alleged in that case that he was "a registered Paramedic with the National Registry of Emergency Technicians [], certified as a Paramedic with the Pennsylvania Department of Health, has over five (5) years of experience and education as a Paramedic, and has well over 1,100 hours of field internship experience." *Id.* ¶ 29.

On December 11, 2018, the City of Philadelphia filed a Motion for Summary Judgment in *Frost v. City of Philadelphia*, arguing, *inter alia*, plaintiff "was unable to perform the essential functions of the [Fire Services Paramedic] cadet position with or without an accommodation." No. 17-3869, ECF No. 24 at 5.  In his response to the City's Motion, plaintiff argued that Fire Services Paramedic cadet was a position "for which he was highly qualified and one that he could perform with the assistance of reasonable accommodations."  No. 17-3869, ECF No. 27 at 8.
On June 17, 2019, Judge Baylson granted the City's Motion, concluding that: (1) although plaintiff "was qualified to perform the position of FSP [i.e., Fire Services Paramedic] cadet" with

---

[1] Defendant also contends that its termination of plaintiff's disability benefits was "fully consistent" with "news and social media evidence in which [plaintiff] confirmed—in his own words—his return to work." Def.'s Mot. at 2.  This "news and social media evidence" is not discussed in this Memorandum.

3

reasonable accommodations, (2) he failed to show that the City's justification for terminating him—the fact that he "fail[ed] a retest" at the Fire Academy—was pretextual. 2019 WL 2516987, at *6–8.

### E. Present Motions

On December 23, 2019, plaintiff filed the Complaint in this case, alleging that defendant breached the Policy by terminating his disability benefits.

On January 15, 2021, the parties filed cross-motions for summary judgment. The parties filed their responses on February 24, 2021. The cross-motions for summary judgment are thus ripe for decision.

## III.   LEGAL STANDARD

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. However, the existence of a mere "scintilla" of evidence in support of the nonmoving party is insufficient. *Id.* at 252. In making this determination, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d

Cir. 2007). The party opposing summary judgment must, however, identify evidence that supports each element on which it has the burden of proof. *Celotex Corp.*, 477 U.S. at 322.

## IV. DISCUSSION

The parties agree that, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), the Court must review defendant's decision to terminate plaintiff's disability benefits on a *de novo* basis. In applying *de novo* review, "the role of the court is to determine whether the administrator . . . made a correct decision." *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011).

In his Motion for Summary Judgment, plaintiff argues that (1) he "has been, and continues to be, totally disabled under the terms of the Policy"; (2) in denying benefits to plaintiff, "[d]efendant did not take into consideration the extensive, employer-specific series of accommodations that [plaintiff] would require as any type of precondition to return to the workforce"; and (3) he is "statutorily entitled to an award of Attorneys' fees." Pl.'s Mot. at 2. Defendant responds that, in light of Judge Baylson's summary judgment ruling in *Frost v. City of Philadelphia*, plaintiff is "collaterally estopped from arguing here that he needs more than 'reasonable' accommodations to work." Def.'s Resp. at 2.[2]

### A. Collateral Estoppel

The doctrine of collateral estoppel "ensures that once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231 (3d Cir. 1995). Collateral estoppel

---

[2] Plaintiff argues that it would be "onerous and unnecessary" for the Court to consider "[the] pleadings in his case against the City of Philadelphia." Pl.'s Resp. to Def.'s SUF ¶ 42. That argument is rejected. A district court exercising *de novo* review of an ERISA administrator's decision may consider evidence outside the administrative record. *Luby v. Teamsters Health Welfare and Pen. Trust Funds,* 944 F.2d 1176, 1185 (3d Cir. 1991).

applies when "(1) the issue sought to be precluded [was] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Peloro v. United States*, 488 F.3d 163, 174–75 (3d Cir. 2007).

1. Prior Litigation of Issue

As an initial matter, the Court concludes that the first three elements of collateral estoppel are satisfied in this case: (1) the issue sought to be precluded—that plaintiff needs no more than reasonable accommodations to perform an occupation—is the same as that involved in *Frost v. City of Philadelphia*; (2) that issue was actually litigated; and (3) that issue was determined by Judge Baylson's ruling on the City of Philadelphia's Motion for Summary Judgment—that plaintiff "was qualified to perform the position of FSP [i.e., Fire Services Paramedic] cadet" with reasonable accommodations, *see* 2019 WL 2516987, at *7. Therefore, the Court next considers whether the final element of collateral estoppel is satisfied—i.e., whether Judge Baylson's determination that plaintiff needs no more than reasonable accommodations to return to work was "essential to the prior judgment." *Peloro*, 488 F.3d at 174–75.

2. Essential to Prior Judgment

As discussed *supra*, in *Frost v. City of Philadelphia*, plaintiff successfully litigated the issue of whether he was able to perform an occupation—Fire Services Paramedic—with reasonable accommodations. That issue was decided by Judge Baylson as one step in his analysis of plaintiff's ADA claim under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See* 2019 WL 2516987, at *5 (Frost's ADA claim was "subject to the three-part burden-shifting framework set out in *McDonnell Douglas*"). Judge Baylson ultimately concluded the *McDonnell Douglas* analysis by ruling that plaintiff failed to prove the City of Philadelphia's stated justification for terminating him was pretextual.

6

Collateral estoppel does not only apply to "ultimate" conclusions. *In re Convertible Rowing Exerciser Patent Litig.*, 814 F. Supp. 1197, 1208 (D. Del. 1993) (collateral estoppel requires that "preclusive effect be given to findings which are intermediate steps in the decision-making process rather than simply 'ultimate' facts"); *see also* Restatement 2d of Judgments, § 27 (1982) ("The line between ultimate and evidentiary facts is often impossible to draw."). Collateral estoppel applies to all conclusions that "are necessary to support the judgment in the sense that it could not be reached absent any one of them." Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4421 (3d ed. 2021).

Judge Baylson's determination in *Frost v. City of Philadelphia* that plaintiff was able to perform an occupation with reasonable accommodations was "essential to the prior judgment" in that case. A final judgment in *Frost v. City of Philadelphia* could not be reached without addressing and deciding that issue.

### 3. Conclusion

For the foregoing reasons, collateral estoppel bars plaintiff from relitigating the issue of whether he is able to perform an occupation with reasonable accommodations.[3]

### B. Reasonable Accommodation

In light of the fact that plaintiff is able to perform an occupation with reasonable accommodations, the Court considers whether, under the Policy, plaintiff "is not able to engage in any gainful occupation in which he . . . might reasonably be expected to engage because of education, training, or experience." AR at 82.

---

[3] The doctrine of judicial estoppel may also be applicable in this case. Judicial estoppel is a "judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that [he] has previously asserted in the same or in a previous proceeding." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996). In view of the fact that the parties do not address judicial estoppel in their briefing, the Court does not base its ruling on this issue.

Where the plaintiff is able to return to work with reasonable accommodations, courts have routinely rejected the argument that the plaintiff is unable to perform "any gainful occupation" under the terms of a disability benefit policy. *See, e.g., Siderio v. CIGNA Corp.*, No. 96-7679, 1998 WL 398073, at *8 (E.D. Pa. June 30, 1998) (denying benefits under policy requiring plaintiff to be unable to perform "any occupation" because he could perform sedentary work with reasonable accommodations); *see also Bekiroglu v. Paul Revere Life Ins. Co.*, 223 F. Supp. 2d 361, 366–67 (D. Mass. 2002) ("[a] claims administrator may properly consider an employer's job requirements, as they are adjusted by reasonable accommodations, in determining whether an employee is totally disabled" from any occupation).

In light of the foregoing case law, the Court concludes that there is no coverage under the Policy if plaintiff can return with reasonable accommodations to "any gainful occupation" in which he might be expected to engage because of his education, training, and experience. As discussed *supra*, Judge Baylson has issued a ruling on this issue—plaintiff is able to perform the duties of Fire Services Paramedic, a gainful occupation, with reasonable accommodations. In view of his years of experience and education as a paramedic, this Court concludes that Fire Services Paramedic is an occupation in which plaintiff might be expected to engage with accommodations because of his education, training, and experience. Accordingly, plaintiff is not entitled to disability benefits under the Policy.

### C. Attorneys' Fees

Finally, plaintiff argues that he is "statutorily entitled to an award of Attorneys' fees." Pl.'s Mot. at 2. Under Section 502(g)(1) of ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

Because the Court concludes that defendant's decision to terminate plaintiff's disability benefits under the Policy was correct, plaintiff is not entitled to attorneys' fees. *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 245 (2010) ("a fees claimant must show some degree of success on the merits before a court may award attorney's fees" under Section 502(g)(1)).

## V.   CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment is granted and plaintiff's Motion for Summary Judgment is denied. Judgment is entered in favor of defendant, Provident Life and Accident Insurance Company, and against plaintiff, Chase Frost. An appropriate order follows.